**Judith LUNDGREN and Gary Lundgren, husband and wife, Appellants,**

v.

**John EUSTERMANN, M.D., Respondent.**

**No. C8–84–966.**

Court of Appeals of Minnesota.

Oct. 23, 1984.

alleging negligence and a claim for punitive damages. Upon defendant's motion, the trial court granted summary judgment on the punitive damages count. We granted plaintiffs' petition for discretionary review. We reverse and remand for trial.

## FACTS

Judith Lundgren was a patient of Dr. John Eustermann from 1975 to 1981. During this time Dr. Eustermann allegedly prescribed the anti-psychotic drug Thorazine for Lundgren. Lundgren alleges that she has suffered numerous adverse symptoms from this long-term Thorazine treatment. Her complaint charges that Dr. Eustermann was negligent in prescribing excessive amounts of Thorazine and in failing to consider the risks and adverse effects from inappropriate administration of Thorazine. The complaint asks for punitive damages, alleging that Dr. Eustermann acted in willful, wanton, and intentional disregard of Lundgren's rights, safety, and physical well being. Dr. Eustermann denies the allegations and states that he followed acceptable standards of medical practice in the treatment of Lundgren.

Eustermann moved for summary judgment under Rule 56 of the Minnesota Rules of Civil Procedure. In the alternative, he moved to strike the claim for punitive damages.

At the hearing on the motions, plaintiff produced an expert opinion from Dr. William Rucker, a licensed consulting psychologist with an extensive background in psychopharmaceutic therapy. Dr. Rucker's opinions were contained in his answers to defendant's expert interrogatories and in a letter he wrote to plaintiff's attorney, dated April 18, 1984. Dr. Rucker's foundational background was also set out in his answers to defendant's expert interrogatories. In his opinions Dr. Rucker stated that the long-term Thorazine treatment of Lundgren by Dr. Eustermann was not consistent with the standard of care required in the medical profession. Dr. Rucker also stated that Dr. Eustermann exhibited a willful indifference to Lundgren's rights

David G. Moeller, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, for appellants.

C. Allen Dosland, William A. Moeller, Gislason, Dosland, Hunter & Malecki, New Ulm, for respondent.

Considered and decided by FOLEY, P.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

This is a medical malpractice action brought against Dr. Eustermann, a family physician, by the patient and her husband. The complaint contains various counts

and safety and to the rights and safety of those in her immediate family.

In an order dated May 2, 1984, the trial court granted summary judgment on the punitive damages count. It considered only Dr. Rucker's answers to defendant's expert interrogatories, disregarding Dr. Rucker's letter of April 18th, and decided that Dr. Rucker was incompetent to testify as an expert regarding the Thorazine treatment. The court therefore held that plaintiffs had presented no evidence entitling them to punitive damages.

## ISSUE

In granting the petition for discretionary review this court limited review to the following issue:

Whether evidence of the opinion of Dr. William Rucker, a licensed consulting psychologist, submitted to the trial court by petitioners, was sufficient to raise a genuine issue of material fact on the claim for punitive damages?

## ANALYSIS

At the summary judgment hearing plaintiffs presented evidence of an opinion by their expert witness, Dr. William Rucker. Dr. Rucker has extensive training and experience in the areas of psychology and pharmacology, including a Ph.D. degree in the area of biopsychology and numerous graduate level medical courses.

Since 1969, Dr. Rucker has been on the teaching staff at Mankato State University, first as an associate professor of psychology and now as a full professor of psychology. Dr. Rucker has been involved in the psychopharmacologic aspects of drug dependence and in the graduate training of students to work as licensed psychologists and behavioral analysts. He has conducted research related to drug detoxication and developed courses to prepare students to work in environments where patients were receiving psychoactive drugs such as Thorazine.

Despite Dr. Rucker's extensive background in psychology and psychopharma-cology, the trial court ruled that he was not competent to testify as an expert with reference to the prescription of the drug Thorazine. It stated that nothing in Dr. Rucker's background shows him to be knowledgeable about the standards of the medical community.

■ The standards to be used in determining whether an expert should be allowed to testify as to a particular matter were set forth in *Cornfeldt v. Tongen*, 262 N.W.2d 684 (Minn.1977). Initially, the competence of a witness to testify on a particular matter is a question of fact peculiarly within the province of the trial judge, whose ruling may not be reversed unless it is based on an erroneous view of the law or is clearly not justified by the evidence. "With respect to medical witnesses, [the Supreme Court has] required both sufficient scientific knowledge of and some practical experience with the subject matter of the offered testimony." 262 N.W.2d at 692.

The *Cornfeldt* court went on to quote from *Swanson v. Chatterton*, 281 Minn. 129, 138, 160 N.W.2d 662, 668 (1968), which, in turn, quoted from *Pearce v. Linde*, 113 Cal.App.2d 627, 629, 248 P.2d 506, 508 (1952), that

[t]he definitive criteria in guidance of the trial court's determination of the qualifications of an expert witness are recognized * * * to rest primarily on 'occupational experience' * * *. He must have had basic education and professional training as a general foundation for his testimony, but it is a practical knowledge of what is usually and customarily done by physicians under circumstances similar to those which confronted the defendant charged with malpractice that is of controlling importance in determining competency of the expert * * *

262 N.W.2d at 692–693 (citations omitted).

■ It is true that Dr. Rucker is not a medical doctor and does not treat patients by prescribing drugs for them. Nevertheless, to say that a licensed psychologist with Dr. Rucker's experience in the use

and effects of anti-psychotic drugs on patients with emotional problems is not "conversant with the relative standard of care in the medical community" is not warranted by the evidence. Dr. Rucker's extensive knowledge in the area of psychopharmacology, combined with his experience in training psychologists to work with patients on drug therapy programs, qualifies him to give an opinion regarding the Thorazine treatment at issue here. The weight to give that opinion would be up to the jury, but the record shows him qualified to give one.

Dr. Rucker carefully examined Lundgren's medical records and traced the history and progression of her therapy with Dr. Eustermann. Dr. Rucker personally consulted with Lundgren concerning the adverse symptoms she allegedly suffered from the lengthy Thorazine treatment. Dr. Rucker concluded that the continued prescription of Thorazine over a six year period was not consistent with the standard of care required in the medical profession. Dr. Rucker states that the Thorazine treatment was initially based on an inadequate diagnosis. Further, he states that there is no evidence in Lundgren's medical records showing that the effects of the drug were monitored, even though there was evidence that Lundgren was experiencing harmful side effects. Dr. Rucker notes that alternative therapy was never tried. It is the failure to monitor that leads Dr. Rucker to conclude that Dr. Eustermann exhibited a willful indifference to Lundgren's rights and safety. Dr. Rucker notes that the dangers of Thorazine are well known throughout the medical community and that a physician has a clear duty to be familiar with a drug he has prescribed and to keep a record of its monitored effects. Not to do so, in Dr. Rucker's opinion, results in willful indifference.

Evidence of the lack of monitoring and absence of alternative therapy is specified in Dr. Rucker's reply to defendant's expert interrogatories. Further evidence can be found in the letter dated April 18, 1984, written by Dr. Rucker to plaintiff's attorney. Both the interrogatory answers and

April 18th letter were before the court at the summary judgment hearing. In order to grant summary judgment the trial court must determine on the basis of all pleadings, depositions, answers to interrogatories, admissions, and affidavits on file, that there is no genuine issue as to any material fact. *Schmidt v. Smith,* 299 Minn. 103, 107, 216 N.W.2d 669, 671 (1974).

■ The trial court disregarded the April 18th letter, stating that it was not shown to be part of the record and that it contained legal conclusions. The April 18th letter should have been considered in determining whether a genuine issue of material fact existed. The letter was submitted to the trial court at the time of the hearing, and should have been considered as part of the record. It is crucial that all evidence be considered before denying a party the right to trial. Nor should the letter have been ignored merely because it contained a legal conclusion. Rule 704 of the Minnesota Rules of Evidence provides that

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Minn.R.Evid. 704. Although the April 18th letter should have been considered, its exclusion should not have been decisive since the interrogatory answers alone were sufficient to prove that a genuine issue of fact existed.

■ The trial court examined the interrogatory answers and concluded that they failed to show clear and convincing evidence that Dr. Eustermann exhibited a willful indifference to plaintiff's rights and safety. However, the plaintiff does not need to produce clear and convincing evidence to defeat a summary judgment motion. The moving party has the burden of showing an absence of factual issues before summary judgment can be granted. *Lowry Hill Properties, Inc. v. Ashbach Const. Co.,* 291 Minn. 429, 440, 194 N.W.2d 767, 774 (1971). The nonmoving party must only show that there are specific

facts in existence which create a genuine issue for trial. Any doubt as to the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party. *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974). While it is true that the punitive damages statute requires clear and convincing evidence, that is the plaintiff's burden at trial. Minn.Stat. § 549.20 (1982). However, to defeat a summary judgment motion, Lundgren need only show the existence of facts creating a genuine issue for trial. Dr. Rucker's opinion that Dr. Eustermann failed to monitor and record the effects of Thorazine treatment over a six year period is sufficient to raise a genuine issue for trial.

Summary judgment should be granted with due caution so that litigants may be permitted trial where a bona fide dispute as to material facts exists. *Couillard v. Charles T. Miller Hospital, Inc.*, 253 Minn. 418, 421, 92 N.W.2d 96, 99 (1958). Rarely will it be proper to grant summary judgment on a punitive damages claim before all evidence has been heard. The better practice is for the trial court to make the decision in the absence of the jury after all evidence has been heard. Then, if there is evidence to support punitive damages, the attorneys should be allowed to go forward on that issue to the jury. If not, a directed verdict on that issue should be entered.

### DECISION

The trial court erred in ruling that Dr. William Rucker was not competent to give an expert opinion regarding the Thorazine treatment prescribed by Dr. Eustermann. The trial court erred in granting summary judgment on the punitive damages claim.

Reversed and remanded for trial on all issues.